56 CCPA

**Application of Charles H. FUCHSMAN.**

**Patent Appeal No. 8044.**

United States Court of Customs and Patent Appeals.

Jan. 16, 1969.

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. The board consisted of Dracopoulos and Lidoff, Examiners-in-Chief, and Stone,

———◆———

Milton L. Simmons, Cleveland, Ohio, for appellant.

Joseph Schimmel, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN and KIRKPATRICK,* Judges.

KIRKPATRICK, Judge.

This appeal is from a decision of the Patent Office Board of Appeals [1] affirming the examiner's rejection of all the claims (1 through 20) of application serial No. 474,185, filed July 22, 1965, for "Ferrous Sintered Article and Method Therefor."

The invention relates to the production of articles formed of sintered, iron powder. A mixture is provided of relatively pure powdered iron with about 0.1 to about 0.9 parts by weight of elemental powdered copper and about 0.1 to about 0.6 parts by weight of elemental powdered sulphur. The mixture is compacted into a formed article at about

Acting Examiner-in-Chief. Mr. Stone wrote the opinion of the board.

50,000 psi and sintered in a substantially non-oxidizing atmosphere. Particular significance is attached to the fact that the proportion of copper in the mixture is less than 1% by weight and appellant's application states:

> Although it has been proposed that elemental sulfur provides greatly improved strength at relatively low compaction pressures, and that copper is compatible with sulfur in this respect, it is believed that no one has recognized heretofore that in combinations involving less than 1% each, respectively, copper and sulfur, with powdered iron sintered articles there is thus provided an unexpected, greatly improved effect unpredictable from the activity of either sulfur or copper alone. Although copper has been used for various reasons in powdered iron mixes, it has always been used in quantities in excess of one percent.

Claims 5, 10, 15 and 20 are product claims while the remaining claims are method claims. A more significant grouping of the claims from the viewpoint of our subsequent discussion, is that claims 1–10 and 16–20 recite a proportion of copper in the mixture in the range 0.1% to about 0.9% (or in some of these claims up to 1%) while claims 11–15 recite a proportion of copper in the mixture in the range 0.1% to 0.7% by weight.

Only one reference, Russo U. S. patent No. 3,120,699, issued Feb. 11, 1964, has been cited. Russo discloses the production of sintered articles from powdered iron admixed with sulfur in the range 0.1%–2% by weight. Russo also refers to the addition of copper to such a mixture, stating:

> When copper powder is used as a strength-inducing additive, the effects of the sulfur and the copper are not additive. At concentrations substantially in excess of 1% copper, the sulfur addition produces no significant improvement in the strength of the

sintered iron part, sulfur performing essentially independently of copper. Although while copper is not helpful to the achievement of strength through my invention, it of course could be tolerated to enhance some property of the system, other than strength.

The examiner rejected all the claims 1–20 under 35 U.S.C. § 103 as obvious in view of Russo, stating:

> The reference further discusses copper as a strength-inducing additive, but indicates that, if the copper is in excess of 1%, then the sulfur addition produces no significant improvement. This is a clear teaching that *less than 1%* of copper would be used with the sulfur to achieve the optimum strengthening characteristics * * *. Since the patent teaches the addition of copper and sulfur to iron powder prior to sintering, to use such a combination to achieve the results achieved by applicants is obvious from the reference.

The board agreed with the examiner that the previously quoted portion of the Russo reference constituted a teaching of the use of less than 1% of copper, saying:

> Appellant construes this language as to mean the reference has not used less than 1% of copper. We do not so consider it and we are in accord with the Examiner's view that this teaching would suggest to one skilled in the art that a proportion of less than 1% of copper may be used in conjunction with sulfur. * * *

Then the board proceeded to affirm the examiner's rejection of the claims.

On appeal, appellant contests the board's finding that Russo inferentially teaches a proportion of copper less than 1% and emphasizes the unexpected nature of the results obtained by addition of copper and sulphur in the proportion claimed. To provide a visual indication of these advantages, appellant, in his

brief, includes a graphical presentation of certain strength data *of record,* namely Table I of the patent application, as follows:

Fig. 1

What we find interesting about appellant's graph is the portion of the plot for the mixture having 0.2% sulphur, lying between the points which we have marked as C and B. The point B represents the 0.2% S; 0.9% Cu point of Table I. The point C is represented by the intersection of the 0.2% S plot with a horizontal line A–A we have provided, which passes through a point on the vertical axis intersected by the 0.2% S plot and which represents the rupture strength of the 0.2% sulphur mixture *with no copper at all present.*

It will be seen that the portion C–B of the 0.2% sulphur plot, *which lies with-*

*in the claimed range of copper recited in claims 1–10 and 16–20,* represents a range in which the addition of copper to the 0.2% sulphur mixture reduces its rupture strength to less than what it would be if no copper were added to the 0.2% sulphur at all. Stated alternatively, it is clear that in the range C–B the effect of the added copper to the 0.2% sulphur mixture is not additive to the effect of the sulphur alone in strengthening the material. However, it is the teaching of Russo that above 1% of copper, the effects of the copper and sulphur are not additive, and one skilled in the art might naturally expect it to be obvious that the effects would not be additive below 1% either.[2] Thus, in the range C–B of the 0.2% sulphur plot, which lies within the range of copper recited in claims 1–10 and 16–20, appellant's mixture is behaving in accordance with what would be obvious from the teachings of Russo.[3] As to these claims, therefore, the rejection under 35 U.S.C. § 103 is affirmed.

As to claims 11–15 which recite a proportion of copper in the range 0.1%–0.7%, a different situation prevails. Within this entire range as may be seen from the graph, the strength of the mixture with copper and sulphur is greater than with just sulphur alone,[4] which would be contrary to what would be expected from the obvious teaching of Russo. Therefore as to claims 11–15, we reverse the decision of the board.

## CONCLUSION

The decision of the board is affirmed as to the rejection of claims 1–10 and 16–20; the board's affirmance of the rejection of claims 11–15 is reversed.

Modified.

2. Although this conclusion as to what would reasonably be an "obvious" expectation to draw from Russo concerning results with less than 1% copper is contrary to that drawn by the board, it is in accordance with what appellant himself apparently considers to be the obvious result to be expected from Russo, as indicated by the following passage from his brief:

It is Appellant's position, as previously set forth, that in view of the teaching of Russo, the results obtained by using copper in the range disclosed and claimed by the instant application, does yield an unexpected result, since in all cases an additive effect is obtained, and frequently more than an additive effect is realized. *This, in spite of the teaching from the patent to Russo that the effect of sulphur and copper will not be additive.* [Emphasis added.]

On this point we feel that it is more reasonable to believe that the "obvious" teaching to be drawn from Russo for the effects contributed by the copper and sulphur is that they are not additive in the range below 1% copper either.

3. A generally similar argument is made in the solicitor's brief with regard to the 0.9% copper; 0.2% sulphur point of Table I, as follows:

Assuming arguendo that appellant has correctly ascertained the teachings of the reference, it appears that appellant has shown that a combination of 0.3–0.6% copper with 0.2–0.4% sulfur does unexpectedly and significantly improve strength as compared to the use of such amounts of sulfur alone * *. However, the combination of 0.9% copper with 0.2% sulfur significantly *decreases* strength as compared to the use of 0.2% sulfur alone. According to appellant's view of the teachings of the reference, this decrease would be expected. Therefore, claims 1–10 and 16–20 which cover the use of 0.9% copper with 0.2 sulfur would be obvious even from appellant's view of the teachings of the reference.

4. The solicitor's brief takes a contrary view on this point by comparing the rupture strength of a 0.7% copper, 0.25% sulphur mixture, given in Table III as 96,000 psi, with the rupture strength of a mixture containing 0.2% sulphur alone, given in Table I as 113,000 psi. We feel, however, that these results from different tables cannot be properly compared as the examples used in Table I were compacted at a higher pressure, 64,000 psi than those for Table III, 50,000 psi and, hence, could be expected to be in some degree mechanically stronger due to the different compaction pressure.